Thank you. Good afternoon, Your Honors. May it please the Court, my name is Rachel Bates. I represent the defendant appellate in this case, the City of Maryland Heights Police Officer Michelle Mason. Plaintiff has sued Officer Mason for alleged civil rights violations pursuant to 42 U.S.C. 1983 and the 4th and 14th Amendments. Plaintiff also has a corresponding Missouri State Law claim under the Missouri Strip Search Statute. Uniquely in this case, both parties have moved for cross motions for summary judgment on the basis of an upper body search only. Now, there are two distinct searches in this case, and I'll discuss the facts of those searches a little bit later, but the District Court denied both parties motions for summary judgment finding an issue of fact on a lower body search precluded summary judgment on an upper body search. I have a question about that because it seems to me that there's only one claim for an unreasonable search, isn't there, that has been brought in the complaint? In other words, there's not count one, upper body search, count two, lower body search. Yes, Your Honor. So I'm a little confused of, I mean, it sounds like both parties wanted to do this, but I'm confused by the procedure and why it doesn't sort of turn this into a factual issue that the District Court made that would preclude us from considering this. Yes, Your Honor. So there is, in fact, only one count two for the Fourth Amendment search, and it embodies both the upper body and the lower body search. And in this case, plaintiff actually moved for summary judgment first and asked for the court to consider the in her motion for summary judgment. We answered in a cross motion for summary judgment, asking the court to consider, again, the same, the upper body search. And the reason why it's important for the court to consider these as two distinct searches, because the upper body search consists of a pat-down search. There is physical contact with plaintiff's breasts. There is the shaking and movement of the bra. The lower body search deals with a more egregious search that is heavily factually disputed by both parties. The factual scenario of the upper body search is mainly there is no undisputed fact regarding that search. Now, if this court were to consider both of these searches together as one search, this case will ultimately get submitted to a jury on the basis of the lower body search. But this is a qualified immunity appeal, which means that Officer Mason is entitled to immunity from suit. She should not suffer the indignity of having to defend the upper body search factual circumstances, which are undisputed, in the court. More importantly, though, when... She's going to be defending the lower body search, right? I mean... Yes, Your Honor. So it's not a typical immunity situation where she doesn't have to go to trial. And lower body search that's at issue, the entire chain of events will be admitted. So I'm not sure what the dignity of the trial... I'm similarly confused to Judge Kelly. I'm new here, but this is the first time I've seen a qualified immunity case where you've got a search split up into two elements like this. It almost feels evidentiary, like excluding evidence from the trial as opposed to qualified immunity. Well, and I don't... And I disagree, Your Honor. I don't believe that it would be an evidentiary issue for the jury excluding the evidence, but I think that it narrows the issues. And it leads to my more important point here, is when this search, if it is considered as a whole, is submitted to the jury, the upper body search and the lower body search, and the jury finds that there is a constitutional violation, Officer Mason will not know what aspect of this search. Was it the upper body search? Was it the pat-down search? Was it the... Undeniably, it would most likely be, if the jury believes the plaintiff's sexual situation or testimony, it would most likely be the lower body search, but if the... But there is... Just real quick so I understand your terminology. There was a pat-down away from the car, correct? Yes, Your Honor. Okay. So when you say pat-down, is that what you're referring to? Well, and I think that there's a little bit of... There was a pat-down outside of the car, yes. But then the plaintiff was moved into the car facing outwards for the pat-down portion of the event that... In which Officer Mason shook her bra and touched... Yes, her bra. But that wasn't a pat-down, right? That was under her shirt. Am I correct on that? I mean... It's under her shirt, but it's outside of her bra. And I believe that it's been undisputed and cited numerous times, and actually at police brief as well, that the physical contact was not hand to breast, it was hand to bra. So it was a pat-down search. We define it... The defendant defines it as pat-down search as it occurred outside of the bra. Which... So how would the... I'm sorry, just back to the jury trial. I'm trying to figure out how the jury would be instructed on this. What does it matter? Would the jury... Would you be asking then, let's say you get qualified immunity on what you're calling as the upper body search. So what? You go to the jury, I don't mean to be flippant, but sort of does it... Is there an instruction that says to the jury, consider the upper body search only as it relates to the lower body, but you cannot find a constitutional violation on the upper body search alone? Well, I would submit that the search itself, it would narrow the issues for the jury. The jury would consider the testimony of the plaintiff and the testimony of the defendant as it applies to that lower body search, which I think is going to be the crux of this case when it is actually submitted to the jury. I don't... I think that it would afford... It would narrow the issues prior to trial as far as the upper body search is applying. And it would also provide some clarity for Officer Mason if there were any sort of jury verdict as to which action in going forward in her work as a police officer was in fact unconstitutional, which I would also argue. As far as the distinct searches, both the plaintiff and the defendant... But the plaintiff has initiated this motion for summary judgment proceedings in looking at the searches in separate contexts. So we would ask that the court continue with that. Well, I guess I'm struggling with the same thing the other two judges are. But these two searches, as you call them, two distinct searches, they occurred simultaneously, right? They did not... We're not talking about doing the upper body search and then five minutes later or ten minutes later doing the lower body search. It was... You start at the head and you move down for... I guess... I don't know exactly how these are done, but something along those lines? I would disagree that they did not occur simultaneously. The pat-down search, the upper body search, did in fact occur at first in time. So it would be... But was there a separation of time between the two? No, I don't believe so. There was not... It would be a continuation into the lower body search. So I believe that the court could consider the reasonable suspicion... I'm sorry. Excuse me. The court could consider the reasonable suspicion that the officer had prior to and take it and facts of the upper body search and come to a decision that way. So it was one continuous search? It was one continuous search, but we're, I guess, asking for you to stop before we hit the lower body. So what is... It's reasonable suspicion, that's your argument, based on the upper body, if we're willing to break them in two. Is that the standard we have to apply? Well, I would argue that it is an arguable reasonable suspicion standard that would be But the bottom line is this is a temporary investigative stop. But it's under her shirt. Doesn't that make a difference? It's not a pat-down, then, in the sense that we usually deal with. Well, if we're talking about a reach-in to her shirt, I believe there is case law in the 8th Circuit that finds that a reach-in to underneath the shirt is actually constitutional. But, I mean, I think it's conceded by everyone that there was touching and there was... I forget how it was described, but you know what I'm getting to. I mean, it's not... It's more than your typical pat-down looking for weapons or something along those lines. Well, and I would disagree because I would say that her contact was never hand-abreast. Unlike any other strip search case under the Fourth Amendment that has been cited in the 8th Circuit, there was never a disrobing. There was never an exposure of genitalia. So we've talked throughout this appellate brief and this appellate process that this is a strip search under the... Or, I'm sorry, plaintiff would argue that this is a strip search under the Fourth Amendment, and I would say that that's not true. It is in contrast to every single strip search case that was cited by appellant, and every single Fourth Amendment strip search case requires some sort of disrobing and some sort of exposure of genitalia. Didn't she... Didn't MAB testify that she was told to unhook her bra in the back? She did testify. So it was unhooked. It... She did testify that it was unhooked. I don't know that that matters because it would still... Officer Mason would still... The premise that she still had her hand to outside of the bra is, I think, the important factual context here. So what's the basis of the reasonable suspicion here? That it was a... Excuse me. Plaintiff was never arrested. So she was never... The entire traffic stop itself was 20 minutes. It was a short, temporary, investigative, lawful traffic stop. Plaintiff has admitted that she was speeding. She admitted that she consented to a search of her vehicle based on the reasonable suspicion that Officer Johnston had when he called out for female assistance. Well, reasonable suspicion of what, though, I guess I'm asking? I mean, what... What was the officer concerned about at that point? Well, I think it's a pretty... It's a lower standard than probable cause. It's just a reasonable suspicion, and for a particularized and objective basis for suspecting criminal activity. So he's observing Officer Mason... Or, excuse me. He's observing the plaintiff and her behaviors. The vehicle itself, he pulled it over for speeding lawfully. The license plate that was attached to the vehicle had a warrant that was attached to it for the person that was associated with the warrant had a history of narcotics and robbery charges. The plaintiff herself had a criminal history of some sort of domestic assault, and he personally observed her behavior, her nervous demeanor. So based on those, he called Officer Mason... Those factors, he called Officer Mason to assist as a female person to search her. The only reason that Officer Mason is in this lawsuit is because she was a female that was called to assist another officer and had every right to rely on that other officer's reasonable suspicion to conduct that search. Based on the totality of the circumstances here, Officer Mason had an arguable reasonable suspicion to conduct the... Excuse me. To conduct the upper body search and should therefore be entitled to qualified immunity because of that. I have three minutes left. I'd like to reserve them for rebuttal if the court has no more questions. Thank you, ma'am. Mr. Schock? May it please the court, my name is Beavis Schock. I represent MAB Council. If I can, I'll start off and explain a little bit how we got here procedurally. Plaintiff moved for partial summary judgment because the facts of the upper body search are not significantly in dispute. There is actually a dispute over one aspect of it because Officer Mason said that that part of the search happened with MAB having her hands up on the light bar of the patrol car and MAB says it happened in the car after she had been seated in the backseat. I certainly agree that it's not a pat-down, though, and we cite in our case some standards for pat-down from other cases and the officer's supposed to have the thumb in and just run down the chest one time. Anyway, what we did was this plaintiff moved for partial summary judgment stating we are entitled to a Fourth Amendment conclusion that our client's constitutional rights were violated by that upper body search on the undisputed facts and therefore the court shall be instructing the jury to go to damages only on that issue. That was denied. That's not an appealable issue. Okay, we go forward. The defendant, the appellant's motion for summary judgment added this, threw in and said no, no, no, not only is there no right to judgment for MAB, in fact, MAB should have no right to have any relief for the upper body search and that is where, that's what this case right now is about. If I understand the district court's opinion, the district court determined that it was not able to, that there were still issues of fact to be determined because it wanted to consider the entire search so that there were factual disputes. Doesn't that matter to our ability to take this appeal? I think so. I think that that is correct and the court should write a short opinion and say let's hear the whole case and go on. I found a motion to dismiss essentially on the argument of Judge Cobas that says we're going to trial anyway. I mean, the whole point of qualified immunity is to deny, excuse me, to respect the defendant's right to avoid a trial but that is thwarted in this case so I did ask in my jurisdictional statement that that should be. I'll ask you the same question that I asked Ms. Bates about how the trial would work. Let's say that the defendant is granted qualified immunity on what we're all calling the upper body search. How does that play out at trial? What happens? What's the effect of that except, well, what's the effect of that? Well, I think that that would be handled as follows. The whole case would come in because, the whole story would come in because the totality of the circumstances standard in 1983. Then the jury would be instructed that the fact, maybe even with a special interrogatory, did the officer actually engage in the lower body search or not? I mean, that is a flat factual dispute. Yes, no and that would be one way to handle it. Alternatively, in the special interrogatory, the court could include an instruction that could say that the jury may not find only the upper body search to entitle a ruling for the plaintiff. I mean, that's what comes to mind. So you filed the motion for summary judgment on the theory that even if the jury believes the officer and there was no lower body search, we win because of the upper body search, which is basically uncontested. Precisely and the judge said, it's all mixed together, let's hear the whole thing. Obviously, I mean, from the perspective of the plaintiff at trial, it's delightful for the judge to tell the jury, by the way, I've already ruled on this upper body part and you're going to give her some money on that. Now, let's go to the lower part. You can imagine the jury sitting there saying, yeah, that sounds good. I got it. I know what to do now. But that's strategy, the stuff with opposing counsel and I to deal with much later. If I can add one word to this entire argument, the word is particularized. The case law, Robinson citing Franklin, citing Coleman, all say the same thing. I'm addressing now whether there should be qualified immunity or not, getting to the merits. This case, Officer Mason asserts, she had a conversation at the scene with Officer Johnston and he said, nervous, moving around, and something about a warrant. Those are the three phrases. Now, Officer Johnston says, he said a little more, but that's not what Officer Mason says she heard, which is what's relevant to whether Officer Mason has immunity. Given that the case law requires particularized suspicion, and if we look at the cases that go the other way, there's always, there are cases where the officer saw the subject stuff something in their pants, that sort of thing. There's one where they admitted to the bowl of marijuana. That's the Jacobson case, which you were on, Judge Kelly. There's always, when the search is justified, particularized facts that allow the officer to think, we have to really go and do a search. This allegation, something about a warrant, is a classic, unspecified, not particularized phrase. Had the car already been searched? Was that search complete by the time the officer arrived to conduct the search event, maybe? Yes, Your Honor, and there was nothing found. Is the record say whether the officer knew that, that nothing had been found? I'm sorry, and I cannot remember that. May I submit a letter to that effect? You may. Thank you. Let me see what I want to answer here. Just a couple of quick more things. This domestic assault that was mentioned by my opponent, there was in the computer, which the first officer saw, a statement that M.A.B. had been charged with domestic assault in municipal court, but there was no conviction or anything like that. I imagine what happened was it was an S.A.S., and so it appeared on the officer's computer, but it wouldn't be accessible to the public. But there's not even an allegation that Officer Mason, the defendant here, knew that. What we're supposed to look at is what did Officer Mason know, and she can't get to particularized suspicion. Also in these, one of the things you have to ask is, well, was there a sufficiently established? The case of Hill v. Bogan, which is cited in Jacobson, states very specifically, no strip searches for traffic. You can't stop somebody for a traffic offense and strip search them. You just can't. That's what M.A.B., excuse me, not M.A.B., similar, Mary Beth Gee is a case from the Seventh Circuit from the 80s. That's a constantly cited, very well-known case. And that case talks specifically, that was an intake at the jail case, and there was kind of a mixture of people. And it says absolutely clearly, no strip searches for traffic offenses. Ms. Bates has called the upper body search a pat down. What do you call it? Well, I call it a strip search. That was an easy one. That's a clear difference between the two of you. Because the law is clear what a pat down is. The officer, for officer safety, can go down the legs. They can touch one time down the inner thigh, because people do put knives and guns and everything like that. Down there, the officer is supposed to take the hand with the thumb inside, run right down between the breasts. That's it. That's a pat down. That's what they're entitled to do. And I mean, if I were a policeman, that's what I would want to do. It makes good sense. What we're going forward to here is an actual patting. There is a patting through the bra of the breasts. That is a much more extensive and intrusive event. The case law talks about fear and humiliation as being one of the issues, as when a strip search violates the Constitution. Surely, having one's bra unhooked and then getting patted in that area would create tremendous fear and humiliation. And that's why we think that there is a strip search. So did the district court... I'm not sure if I read the district court order correctly. Did it identify that as a factual dispute as to whether there was an upper body strip search or did they just analyze it all as just one search? Oh, the judge said it was a strip search. The district court said, there was a strip search here. It shouldn't happen. In fact, when we get to the issue of... Then why didn't the district court grant summary judgment? Because the district court said, as Judge Kelly said, the facts are all tied up together and we're going to hear it all at one time. I would say that in one sentence. That's what happened. I do want to raise one more issue, which is this issue of rearrangement. We extensively briefed this. The statute in Missouri, which prohibits strip searches, except in certain circumstances. And of course, all this is based on the idea you have to have a warrant, so there's an exception to the warrant. That's where it all lives. Uses the word rearrangement of undergarments. Now, that means putting something where it was not before, according to the dictionary. We assert that... The officer says not just that she patted the outside, but that she shook it. Which, and I will tell you, I do enough of these civil rights cases to know that shaking of the bra is something that's done under custodial arrest circumstances. And of course, the reason is that sometimes people hide hypodermics and things in there. That's just the truth. That's one of the things that really happens. But the question is, is shaking of that undergarment rearrangement? And I assert that it is. And that's why we really didn't get into opposing counsel's argument whether the Missouri state law claim should go on, which relates to malice. And we can get into the district court stating that so flagrantly violating the Strip Search Statute creates reckless indifference to my client's rights. But it really kind of starts with this question of rearrangement. And I'm asking this court to believe, and it's based on the dictionary, that when the bra is shaken, that is a rearrangement of the clothing. Does it matter what, it seemed like the fact that she had testified that she unhooked her bra is not really in the briefing. Does it matter whether, in other words, do you rearrange it if it's unhooked, but not if it's not unhooked? Well, I think the officer asked her to do it. So that would count too. Yeah, we probably should have done more with that in the briefing. Hill versus Bogan, Mary Beth G. Those are my cases that lead the way. And the Jacobson case in this circuit, the Robinson case, we really didn't talk about that. That, let me emphasize, that came out after the briefing concluded. And there was a strip search found in that case. The facts there are a little different. There was this U-turn to avoid a DWI stop. So right there, everybody's all on red alert, very suspicious. And then the lady admitted she had contraband in her attire. So that case is similar to a lot of the cases which allow the strip search where there is either an observation of somebody hiding something in their pants, which is the Williams case. I think that's Williams. Maybe Brooklyn Heights. But anyway, the point is, we don't have any of that here. So no more questions. I'll quit early. I know you'll be crushed to hear it. Thank you very much for hearing my argument today. Thank you. Ms. Bates, your rebuttal. Thank you, your honors. I did just want to bring the court's attention that there are two cases that are extremely instructive to your evaluation today. And the first of that would be Schmidt versus the city of Bella Villa, which coincidentally, plaintiff's counsel argued in front of Judge Malloy in 2009, I believe, which is a very similar situation where there was an unbuttoning of the plaintiff's pants there, which would be similar here to the unhooking of the bra. The plaintiff was asked to unbutton her pants so that an officer could photograph a tattoo for identification purposes. This court found in specifically noting that there was no disrobing, there was no touching of genitalia, that there was no constitutional violation. Therefore, the officer, they didn't even get to the second prong of qualified immunity and granted the officer qualified immunity. Uniquely, that case also discusses the Missouri Strip search statute and the requirements under that statute. Whereas plaintiff's counsel has said, there's a movement of the bra and that's what constitutes a violation of the statute. That's not necessarily true. The court in the Schmidt versus the city of Bella Villa found that there was a two prong thing, that were needed to constitute a violation of the statute. One would be the movement of the clothing, but the other is an intent to inspect the genitalia of the person that you're searching. And here, there is absolutely no evidence that Officer Mason had that intent under the statute to perform the, to inspect plaintiff's genitalia. I would also state that there is, Your Honor, you had asked a question about whether or not the car search was complete. And I believe that the record reflects that the car search was being performed by Officer Johnson simultaneously as the pat-down search. So I don't know that the information was relayed to either officer that the car search was complete and that there was nothing found. But just one quick note on the fourth, on what Officer Mason knew when she was, before she even spoke to Officer Johnson going into the stop. She knew that, first of all, she was one of two female officers and the only female officer working that night. She knew that under her law enforcement experience and training, that she was usually called out for cases where an officer had formed already reasonable suspicion and had asked for female assistance for a search. She knew that based on her training and experience, she testified that when searching someone, she already has a particularized suspicion that that person has weapons or contraband on that person. So I think the important thing is to keep in mind and look at this case through the lens of reasonable suspicion because it requires that this court examine the totality of the circumstances in light of the officer's specialized training and experience, but it also requires an objective viewpoint here. So what would a reasonable officer do? It is not a specific, particularized as plaintiff's counsel. It's an objective standard as to what a reasonable officer would do under the facts and circumstances in light of their training experience at the time. Sorry, excuse me. Thank you. Thank you. Thank you to both counsel.